UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JAIRE HIGHSMITH,

        Petitioner,

v.

STEPHEN D'ILIO,

        Respondent.

Civil Action No. 13-7139 (RMB)

**OPINION**

---

This matter comes before the Court upon Petitioner's § 2254 petition ("Petition"), see Docket Entry No. 1, which arrived accompanied by his statement that he is not seeking in forma pauperis status and will pay the $5.00 fee applicable to habeas matters as soon as his next month funds are posted. Id. at 1.

Petitioner is a state inmate currently confined at the New Jersey State Prison. He is challenging his December 6, 2002, conviction rendered by the Superior Court of New Jersey, Law Division, Camden County. See id. at 4.[1]

---

[1] Petitioner was indicted on murder, possession of a weapon and hindering apprehension charges. See State v. Highsmith, 2013 WL 57706, at *1 (N.J. Super. Ct. App. Div. Jan. 7, 2013). He took a guilty plea on an amended charge of aggravated manslaughter and was sentenced, under the plea agreement, to a thirty-year prison term, with eighty-five percent parole ineligibility pursuant to N.J. Stat. Ann. 2C:43-7.2(a). See id. He was later re-sentenced to the same term after the Appellate Division's remand under the then-recent State v. Natale, 184 N.J. 458 (2005), holding. Being so re-sentenced, he appealed his sentence as excessive, and had his re-imposed sentence affirmed by the Appellate Division on September 17, 2007. See id.

Having his sentence affirmed by the Appellate Division, he did not seek certification from the Supreme Court of New Jersey. See id. at 6. He did not seek certiorari from the Supreme Court of the United States. See id.

Rather, on January 22, 2009, he submitted his application for post-conviction relief ("PCR") raising numerous challenges unrelated to his plea. See id. at 7 and 22. The Law Division denied Petitioner's PCR application as time-barred under the state law. See Highsmith, 2013 WL 57706, at *1 ("Following oral argument, the trial court denied [Petitioner's] PCR petition . . . finding it time-barred [since it] was filed more than six years after his sentence, or one year beyond the five-year deadline found in the [applicable state law] rule. The [trial] judge [also] found that no manifest injustice resulted from the entry of the plea, as it "was a strategic decision made by [Petitioner] in the face of the allegation of 72 stabbings and the throat slitting. It saved him from a life sentence"). Petitioner appealed, and the Appellate Division affirmed, also finding his PCR application untimely. See id. at 2. ("[Petitioner] does not explain the reason for his silence for 'more than five years after the date of entry of the judgment of conviction that is being challenged.' This omission means that . . . the trial judge's conclusion that the petition was time-barred is unassailable") (original ellipsis omitted).

Therefore, the Appellate Division dismissed Petitioner's PCR appeal noting, inter alia, that "[w]ithout any justification for this extensive delay, no finding can be made [that Petitioner's] failure to pursue legal recourse constitutes excusable neglect." Id. Petitioner sought certification from the Supreme Court of New Jersey, and had his application to that effect denied on July 12, 2012. See Docket Entry No. 1, at 23; State v. Highsmith, 214 N.J. 175 (2013). On November 8, 2013, Petitioner executed the Petition at bar, see Docket Entry No. 1, at 25, and it was received by the Clerk on November 15, 2013. See Docket Sheet.[2]

Being, apparently, well aware of the timeliness concerns his Petition is likely to bring about, Petitioner dedicated five pages of his Petition to a lengthy argument that the Petition should be deemed timely. See Docket Entry No. 1, at 21-25. However, in these five pages, he merely recited the information summarized supra and asserted that the original attorney

---

[2] Puzzlingly, Petitioner asserted that he handed his Petition to his prison officials for mailing to this Court on September 30, 2013, see Docket Entry No. 1, at 23, that is, *eight days prior to him signing the Petition*. Because Petitioner could not have signed his Petition more than a week after he no longer possessed it, it is self-evident that he handed his Petition to his prison officials for mailing to this Court no sooner than on November 8, 2013, and perhaps later in light of the Clerk's receipt of the same on November 15, 2013. Granting Petitioner benefit of the doubt, the Court will presume that Petitioner handed his Petition to his prison officials for mailing to this Court on November 8, 2013. (The distinction between September 30, 2013, and November 8, 2013, is neither dispositive nor has any material effect for the purposes of the Court's legal analysis.

3

representing him on direct appeal before the Appellate Division passed away in the midst of said appeal, promoting the Appellate Division to entertain his renewed direct appellate challenges <u>nunc pro tunc</u> and grant him relief in the form of a directive to re-sentence under <u>Natale</u>, 184 N.J. 458. <u>See id.</u> at 21.

Paramount here, Petitioner conceded – in his discussion of the timeliness concerns – that his federal habeas period of limitations was triggered on October 9, 2007, and "*expired* on October 8, 2008 [that is, more than three-and-a-half months prior to] January 29, 2009, [<u>i.e.</u>, the date when] Petitioner filed his [<u>pro se</u>] application for post-conviction relief." <u>Id.</u> at 23 (emphasis supplied).[3] Yet, this concession notwithstanding, he still asserted that his Petition at bar must be deemed timely[4]

---

[3] No statement in Petitioner's lengthy discussion of the timeliness concerns associated with his Petition asserted or even attempted to assert no justification for the gap-time following the expiration of Petitioner's federal habeas limitations period.

[4] Correspondingly, the Petition offered this Court a panoply of challenges to his conviction and sentence, none of which implicated Petitioner's plea. However, since Petitioner accepted a plea, his challenges had to be limited only to those duly exhausted claims that assert the invalidity of his plea. In <u>Tollett v. Henderson</u>, 411 U.S. 258, 268 (1973), the Supreme Court held that a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice [s]he received from counsel was not within the [constitutionally guaranteed] standards." In <u>Hill v. Lockhart</u>, 474 U.S. 52, 60 (1985), the Court held that there is no prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), unless the petitioner asserts facts showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. None of

4

simply because, having the Supreme Court of New Jersey deny him certification on July 12, 2013, Petitioner waited only "80 days" until he allegedly submitted his Petition to his prison officials on September 30, 2013 (that is, eight days prior to him signing this Petition). Id. at 24.

On April 24, 1996, Congress enacted Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period starts to run from "the date on which the judgment became final." 28 U.S.C. § 2244(d)(1). A state-court criminal judgment becomes "final" upon conclusion of direct review or at the expiration of time to seek such review. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999).

Here, Petitioner's judgment of conviction finalized when his time to seek certification from the Supreme Court of New Jersey expired after the Appellate Division affirmed his re-sentencing,

---

Petitioner's allegations here or raised during his PCR proceedings asserted such facts. See generally, Docket Entry No. 1. Thus, all Petitioner's challenges fall outside the scope of federal habeas review and, in addition, are facially unexhausted. However, since – as detailed infra – the Petition is untimely on the facts conceded by Petitioner – this Court need not reach the issues of exhaustion or substantive invalidity of his challenges.

that is, twenty days from the date of the Appellate Division's ruling, see N.J. Ct. R. 2:12-3, i.e., on October 3, 2007 (which six days prior to the October 9, 2007, date calculated by Petitioner without explaining the basis for his calculations). Thus, his one-year AEDPA-based period of limitations began to run on that October 3, 2007, date and expired on October 2, 2008, i.e., more than three-and-a-half months prior to Petitioner's filing his pro se PCR notice and *more than five years* prior to his filing of the Petition at bar.

Since Petitioner filed his PCR notice *after* his AEDPA period had already run, Petitioner's filing of this PCR notice could not have triggered the statutory tolling; this would be so even if that PCR notice was timely under the state rules. See Long v. Wilson, 393 F.3d 390, 394-95 (3d Cir. 2004); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004). A fortiori, Petitioner's PCR applications dismissed by the state courts as untimely could not have had any statutory tolling effect, even during the period when the state courts were having it on their dockets and ruling upon it. See Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (An inmate's trial-level PCR application may have a statutory tolling effect only if, in addition to being timely for the purposes of the AEDPA analysis, it is timely and duly perfected under the state court rules); see also Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80 (3d Cir. 2013); Webster v. Ricci, 2013

U.S. Dist. LEXIS 88945, at *15-17 and nn. 13-15 (D.N.J. June 25, 2013) (detailing the Jenkins rule as applied to the § 2254 claims raised by New Jersey state prisoners), certif. denied, Webster v. Ricci, USCA No. 1-3381 (3d Cir.), Docket Entry dated Oct. 25, 2013 (affirming application of the proper perfection rule and quoting Evans v. Chavis, 546 U.S. 189, 191 (2006)).

Thus, unless Petitioner qualifies for equitable tolling, his Petition is untimely by more than five years.[5]

"A litigant seeking equitable tolling bears the burden of establishing two elements: (a) that he has been pursuing his rights diligently, and (b) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); accord Holland, 130 S. Ct. 2549. Thus, unlike in state fora, a litigant's excusable neglect is insufficient to trigger equitable tolling for the purposes of federal habeas review. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). Rather, federal equitable tolling could be triggered only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas

---

[5] See Holland v. Florida, 130 S. Ct. 2549 (2010), and Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998), for a general discussion of equities.

7

petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005); see also Holland, 130 S. Ct. at 2562 (relying on Pace, 544 U.S. at 418). Moreover, even where extraordinary circumstances do exist, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

Here, after Petitioner's AEDPA period expired on October 2, 2008, he kept actively litigating in state fora, but did not file a § 2254 application for more than five years.[6] Moreover, his pre-October 2, 2008, period was already expressly found by the state courts not amenable to even an excusable-neglect-based tolling. Correspondingly, his delay in filing cannot be justified under the federal precedent extracting a much steeper standard. Finally, even after the Supreme Court of New Jersey

---

[6] Had Petitioner had any doubts, he could have commenced a § 2254 proceeding five years ago so to obtain stay and abeyance of his federal petition at the time when he was contemplating and then litigating his PCR applications. See Rhines v. Weber, 544 U.S. 269 (2005); accord Pace, 544 U.S. at 416.

8

denied him certification as to his PCR application, Petitioner still waited three months to file the Petition at bar and then, in an effort to justify his lengthy delay, offered the Court an assertion that he submitted his Petition eight days prior to the date when he signed it.

> Such conduct presents a striking contrast to that examined in Holland and Jenkins, where litigants who had no information about the decisions reached by the state courts, filed their federal habeas petitions either on the very day they learned about the outcome of their state actions or just a few days later, and who met each of their state law filing deadlines and even perfected their abandoned-by-counsel state court applications in less than two weeks. Here, in light of Petitioner's blatant disregard for the consequences of his systemic and wilful laxness, this Court is constrained to deny him equitable tolling.

Webster v. Ricci, 2013 U.S. Dist. LEXIS 88945, at *45-46 (D.N.J. June 25, 2013) (citing Munchinski v. Wilson, 694 F.3d 308, 331 (3d Cir. 2012), for the observation that a litigant shall not be rewarded for "sleeping on his rights" and noting that "[f]inding otherwise would make a mockery of those litigants who did and do go through the very same state court process and yet meet their deadlines or act with utmost diligence and promptness when faced with extraordinary circumstances in order to ensure the availability of substantive federal habeas review").

Since no equitable tolling is applicable to this matter, the Petition should be dismissed for failure to meet the AEDPA

statute of limitations requirements.[7] In conjunction with making such finding, the Court is obligated to determine whether the Petition, as filed, warrants issuance of a certificate of appealability ("COA").

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a COA, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the is a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. 322. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether

---

[7] While mindful of the Court of Appeals' guidance that district courts may sua sponte raise AEDPA's one-year statute of limitations only if the petitioner is provided with an opportunity to reflect on that issue, see United States v. Bendolph, 409 F.3d 155, 169 (3d Cir. 2005) (en banc), this Court finds it unwarranted to issue Petitioner an order to show cause: the five pages in his Petition, dedicated to discussion of the timeliness aspect, unambiguously indicate that Petitioner has sufficiently reflected on this issue and cannot offer this Court any facts warranting equitable tolling. Therefore, the Court will dispense with a facially superfluous here Bendolph notice, and will dismiss the Petition as untimely.

10

the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this Court debatable. Accordingly, no COA will issue.

For the foregoing reasons, the Petition will be dismissed as untimely. No certificate of appealability will issue.

Petitioner will be directed to submit his $5.00 filing fee.[8]

An appropriate Order follows.

                               s/Renée Marie Bumb
                               **RENÉE MARIE BUMB**
                               **United States District Judge**

Dated: December 11, 2013

---

[8] In light of his express statement that he has no intention to seek in forma pauperis status, the Court will direct the Attorney General of New Jersey and the warden having custody over Petitioner to impose the appropriate assessment against Petitioner's prison account in the event Petitioner fails to timely submit his filing fee. See Hairston v. Gronolsky, 348 F. App'x 716 (3d Cir. 2009) (a prisoner's obligation to prepay his filing fee is automatically incurred by the very act of initiating a legal action) (relying on Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)).